## Vaughn v. Shady Grove Milling Company.

(Decided March 24, 1922.)

### Appeal from Webster Circuit Court.

1. Sales—Damages—Measure of Damages.—In an action upon notes for the purchase price of a flouring mill, defendant in an answer and counterclaim pleaded the warranty of the mill, its defects and the extent of expenditure of money that was required to remedy such defects and asked damages: Held, that the measure of damages is the difference between the flour mill in the condition

it was in when delivered to the purchaser, and its value in the condition in which it was warranted to be.

2. Sales—Warranty—How May Be Satisfied.—Where the subject proves defective within the meaning of the warranty, the stipulation can be satisfied in no other way than by making it good.

WORSHAM & HUNT and BOURLAND & BLACKWELL for appellant.

BENNETT & WITHERS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The Shady Grove Milling Company, a partnership composed of Towery, McConnell and Hubbard, sold a Midget flouring mill to appellant, Jack Vaughn, for $1,800.00, of which sum $800.00 was paid, and two notes for $500.00 each were executed by Vaughn to the company for the balance of the purchase price. When the first note became due Vaughn declined to pay it and suit was brought thereon by the company, but before a trial could be had the other note became due and another suit was brought on it against Vaughn; to the first suit he filed an answer and counterclaim in which he traversed certain material averments of the petition, and averred that in making the sale of the mill to him the plaintiffs represented and warranted that said mill was in first class shape and condition, and that it would do everything a new Midget mill would do, and that it would make the same grade of flour, and as much flour to the bushel of wheat as the new Midget mill would make; that all the repairs it would need were replacement of the bolting cloths, and that all the said representations and warranties were false, but he, not knowing of this falsity, relied upon the representations. The two actions were consolidated and heard together. A trial resulted in a verdict on both notes in favor of the company, to which was added: "We find for defendant (Vaughn) the sum of $200.00 the cost of equipping said mill to make it come up to the contract." Judgment being entered in accordance with the verdict Vaughn appeals, and asks a reversal of the judgment on the ground that the evidence offered by him as to the extent of his damages was uncontradicted; that the court's instructions were equivalent to a direction to the jury to find for him the full amount thereof, and that the jury disregarded both the evidence and the instructions.

The evidence shows that the mill which the Shady Grove Milling Company sold to appellant Vaughn had been in use about two years, and that after he purchased it he took it down and moved it to a new location and re-set it; that the mill made fine, high quality flour, but that for some reason unknown to Vaughn and apparently un-discoverable by experts whom Vaughn employed to exam-ine the mill and make repairs, would not properly separ-ate the flour from the bran but left a large quantity of the heart of the wheat in the bran; that bran was selling at about $3.00 per hundred while flour was selling at $6.00 per hundred, and as a consequence Vaughn lost several hundred dollars. He also expended about $300.00 in em-ploying expert millwrights to examine and repair the mill; failing in this he bought and installed a middling machine which not only brought the Midget mill up to standard of production of high class flour but made it even better than the warranty on which he relies for re-covery of damages in this action. He operated the mill several months before he installed the middling machine.

If the mill was defective and would not produce as many pounds of high grade flour from a bushel of wheat as a new Midget mill produced, the warranty if made as contended by appellant Vaughn was broken and the milling company was liable in damages to Vaughn. He had a right in his answer to set up his counterclaim for such damages. We think, however, that the measure of damages to which he was entitled did not include the loss which he incidentally suffered by reason of the mill mak-ing too much bran, nor can he have a recovery for the cost of the middling machine, or the sums expended by him in employing expert millwrights to correct the defects in the mill. The correct measure of damages is the difference between the flour mill in the condition in which it was de-livered to him and its value in the condition in which it was warranted to be. He chose by his conduct as well as his counterclaim to retain the mill and to sue for damages for breach of warranty. The defect in the mill which he charges to be a breach of the warranty is its failure to produce as many pounds of high class flour per bushel of wheat as a new Midget mill would produce under like conditions and circumstances. It, therefore, became a question of fact for the determination of the jury whether the mill as sold and delivered to appellant Vaughn was of less efficiency than it was warranted to be by the seller, and if so, of how much less value was the mill in the condi-

tion in which it was sold and delivered by the company to Vaughn than it would have been had it been in the condition which it was represented and warranted to be by the sellers. The jury heard all the facts with reference to its defective condition, the kind of flour it made and the amount of bran that resulted, and found that the warranty had been breached; that the mill was not as represented and warranted by the sellers, but that it was defective and was in fact worth $200.00 less than a mill of the kind and character this one was warranted to be. "A warranty on the sale of a chattel is, in legal effect, a promise that the subject of sale corresponds with the warranty, in soundness or other quality to which it relates; and is always so stated in the declaration when it is technically framed. It naturally follows that if the subject proves defective within the meaning of the warranty, the stipulation can be satisfied in no other way than by making it good. That cannot be done except by paying to the buyer such sum as, together with the cash value of the defective article, shall amount to what it would have been worth if the defect had not existed." 24 R. C. L., page 254; Hauss v. Surran, 168 Ky. 686.

Appellant was not entitled to a rescission of the contract for he did not offer to return the mill for many weeks after he discovered its defective condition, if indeed he ever offered to return it. Church v. Wright Machine Co., 190 Ky. 561.

The trial court erred in its instructions to the jury, but this error was on the side of appellant Vaughn, and of this he cannot complain. The jury should not have been told that appellant Vaughn was entitled to recover for the loss which he says he sustained by reason of the excessive production of bran by the mill, or for expenses incurred in employing expert millwrights to repair the mill, nor for the cost of the middling machine, for all these things were incidental and too remote, but he was entitled to recover damages in a lump sum for the difference in the value of the machine which was sold and delivered to him, and the machine which they represented and warranted it to be, and no more. Carson-Muse Lumber Co. v. Fairbanks, Morse & Company, 151 Ky. 404; Fairbanks, Morse & Company v. Hooper, 147 Ky. 154.

The evidence submitted to the jury was sufficient to warrant and sustain the verdict.

The judgment is therefore affirmed.